ERNEST MACK,
    Petitioner,


v.                         CIVIL ACTION NO.
                                10-10856-JLT

THOMAS DICKHAUT,
    Respondent.


**MEMORANDUM AND ORDER RE:**
**PETITIONER'S MOTION FOR EVIDENTIARY HEARING**
**(DOCKET ENTRY # 33)**
**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MEMORANDUM IN OPPOSITION TO**
**THE HABEAS CORPUS PETITION**
**(DOCKET ENTRY # 37).**

**January 25, 2012**


**BOWLER, U.S.M.J.**

On May 20, 2011, petitioner Ernest Mack ("petitioner"), an inmate at Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, filed the above styled petition for a writ of habeas corpus under 28 U.S.C. § 2254(d) ("section 2254"). (Docket Entry # 1). The petition challenges his September 20, 2006 conviction, after a plea of guilty, to one count of armed assault with intent to murder, one count of assault and battery with a dangerous weapon, one count of assault and battery and one count of intimidation of a witness as a habitual criminal in Massachusetts Superior County (Suffolk County) ("the trial court"). (Docket Entry # 1). The petition raises the following grounds for relief: (1) ineffective assistance of trial counsel

("ground one"); (2) forced entry of the guilty plea ("ground two"); (3) prosecutorial misconduct by presenting false and misleading evidence to the grand jury ("ground three"); and (4) withholding exculpatory evidence on the part of the prosecution ("ground four"). (Docket Entry # 1). On May 24, 2011, respondent Thomas Dickhaut ("respondent"), Superintendent of SBCC, filed a memorandum in opposition to the petition requesting a denial of the petition. (Docket Entry # 37).


## EVIDENTIARY HEARING

On April 25, 2011, petitioner filed a motion for an evidentiary hearing claiming that "the merits of the facts disputed were not resolved an[d] no inquiries and/or investigation was ever conducted in the state proceedings." (Docket Entry # 33). Petitioner seeks an evidentiary hearing to obtain production of "prison tapes at M.C.I. Concord between July 1 to September 30, 2003," during which he avers that he spoke a number of times to the victim, Athena R. Haddon ("Haddon"), with whom he had a relationship. (Docket Entry # 33). Petitioner, who was housed at the Massachusetts Corrections Institute in Concord, Massachusetts ("MCI Concord") also avers that he listed Haddon's name under the approved calling list of another inmate, Larry Tolbert ("Tolbert"). An April 2005 MCI Concord incident report notes that the "T-Netix System" only holds inmate

telephone records for review for one year.[1]  (Docket Entry # 34, Ex. C).

Petitioner further asserts that the Commonwealth failed to provide telephone records between him and Haddon as well as between Haddon and Detective Waiman Lee ("Detective Lee"), resulting in a fact finding procedure "employed by the state court [that] was not adequate to afford a state hearing." (Docket Entry # 33).  He submits such evidence will be exculpatory thus providing support for ground four.

Section 2254(e)(2) creates a bar to conducting an evidentiary hearing in federal court.  Under the first clause of section 2254(e)(2), "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  Williams v. Taylor, 529 U.S. 362, 432 (2000).  If the petitioner fails to develop the disputed facts within the meaning of the first clause of section 2254(e)(2), this court cannot hold an evidentiary hearing unless the petitioner "meets the other conditions of § 2254(e)(2)."  Id. at 430.  Petitioner need not "point to specific facts he will establish that will entitle him to relief, but rather that his allegations would entitle him to relief and the hearing is likely to elicit the factual support for those allegations."  Teti v.

_____

[1]  The incident report involved a court ordered request for telephone numbers involving another inmate.

3

Bender, 507 F.3d 50, 62 (1st Cir. 2007). In opposing the motion, respondent first argues that because the Massachusetts Appeals Court ("the appeals court") "adjudicated the petitioner's challenge to his guilty plea on the merits," an evidentiary hearing is barred under the Supreme Court's decision in Cullen v. Pinholster, 131 S.Ct. 1388, 1391 (2011) ("Cullen").

Cullen provides that when a state court adjudicates a claim on merits, federal habeas review of that claim under section 2254(d)(1) is limited to the facts that were before the state court. Id. at 1398. It "would be contrary to [the purpose of section 2254(b)'s exhaustion of state court remedies] to allow a petitioner to overcome an adverse state court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo." Id. at 1399; see Atkins v. Clarke, 642 F.3d 47, 49 (1st Cir. 2011).

As discussed infra, the Massachusetts Appeals Court ("the appeals court") rejected the claim for reasons set out in the Commonwealth's brief, which in turn addressed the merits. Accordingly, there was an adjudication of the merits. Section 2254(d) also "applies even where there has been a summary denial" such as where the state court denies a motion based on a "substantive ground that is without merit." Cullen, 131 S.Ct at 1402 (state court denied each state petition "'on the substantive ground that it is without merit'"). Under Cullen, the appeals

court adjudicated petitioner's challenge to the voluntariness of

his guilty plea on the merits. The appeals court affirmed the

denial of petitioner's motion to withdraw the guilty plea,

holding that "nothing in the record . . . suggests that

[petitioner's counsel's] representation was in any way

substandard." Commonwealth v. Mack, 907 N.E.2d 265, 265

(Mass.App.Ct. 2009). The opinion was therefore an adjudication

on the merits because it was consistent with the federal

constitutional requirements for a plea of guilty, as the plea was

found to be knowing, intelligent and voluntary. Brady, 397 U.S.

at 748. Petitioner's request for an evidentiary hearing to

challenge ground two of his petition, forced entry of a guilty

plea, under Brady is therefore without merit.

With respect to ground four, in the event that petitioner's

request for an evidentiary hearing is not denied under section

2254(e)(2), respondent contends that:

> the petitioner would not be entitled to habeas relief were
> he able to prove any of his Brady claims because the Supreme
> Court has not clearly established that a petitioner can
> collaterally challenge an otherwise valid guilty plea due to
> a Brady violation.

(Docket Entry # 36). Pursuant to Tollett v. Henderson, when a

criminal defendant pleads guilty upon the advice of counsel, the

defendant may not raise "independent claims relating to the

deprivation of rights that occurred prior to entry of the guilty

plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus,

even assuming that petitioner avoids the section 2254(e) bar, an evidentiary hearing would not enable petitioner to establish facts that, "if true, would entitle the applicant to federal habeas relief." Teti v. Bender, 507 F.3d at 62.

In sum, to the extent petitioner seeks an evidentiary hearing to obtain the aforementioned prison tapes and an opportunity to depose Haddon and Detective Lee, section 2254(e) and/or Cullen bar the request. The motion for an evidentiary hearing (Docket Entry # 33) is therefore lacking in merit.


PROCEDURAL HISTORY

On August 11, 2003, a Suffolk County grand jury indicted petitioner on the following charges: (1) armed assault with intent to murder under Massachusetts General Laws chapter 265 ("chapter 265"), section 18B (Count One); (2) assault and battery by means of a dangerous weapon under chapter 265, section 15A (Count Two); (3) assault and battery under chapter 265, section 13A (Count Three); and (4) intimidation of a witness under Massachusetts General Laws chapter 268, section 13B (Count Four). Counts one, two and four of the Indictment included habitual offender charges pursuant to section 25 of Massachusetts General Laws chapter 279 ("chapter 279").

On February 27, 2006, the Massachusetts Superior Court

(Suffolk county) ("the trial court") appointed counsel for
petitioner ("trial counsel").  (Docket Entry # 31, p. 13).[2]  On
April 12, 2006, petitioner filed a pro se motion for petitioner
to address the court with a complaint.  (Docket Entry # 31, p.
13).  On September 20, 2006, he pled guilty to the armed assault
with intent to murder charge in Count One and the assault and
battery by means of a dangerous weapon charge in Count Two
without the habitual offender provisions.  Petitioner also pled
guilty to the assault and battery charge in Count Three and the
intimidation of a witness charge as an habitual offender in Count
Four.

The trial court accepted the plea on September 20, 2006.  In
exchange for the guilty plea, the trial court sentenced
petitioner to not more than 14 and not less than 12 years in the
Massachusetts Correctional Institute at Cedar Junction ("MCI
Cedar Junction") on Count One.  On Count Two, the trial court
sentenced petitioner to a five year period of probation to run
from and after the sentence on Count One.  On Count Four, which
included the habitual offender charge, the trial court sentenced
petitioner to ten years in MCI Cedar Junction to run
consecutively to the sentence imposed on Count One.  On Count
Three, the trial court sentenced petitioner to two and one half
years in a House of Correction, which was deemed served.  (Docket

---

[2]  Trial counsel was petitioner's fourth lawyer in the case.
(Docket Entry # 31, pp. 129-30).

Entry # 15, Ex. 1 & 3).

During sentencing, petitioner made an oral motion to stay the sentence for one week to allow him to visit family and resolve property issues.  (Docket Entry # 31, pp. 459-460). Immediately after imposing the sentence, the trial court allowed the motion to stay the sentence, held petitioner on a mittimus without bail and continued disposition of the matter until September 27, 2006.  On September 27, 2006, the trial court revoked the stay and imposed the sentence.

On October 11, 2006, petitioner filed a pro se notice of appeal of the sentence to MCI Cedar Junction.  (Docket Entry # 31, p. 15).  On November 13, 2006, petitioner filed a pro se motion for appointment of counsel for appeal.  On November 27, 2006, the trial court endorsed the motion and referred the case to the Committee for Public Counsel Services ("CPCS") for review. (Docket Entry # 31, p. 15).  He also filed a pro se motion to revise and revoke the sentence under Rule 29, Mass. R. Crim. P. ("Rule 29"), on November 13, 2006.[3]  (Docket Entry # 15, Ex. 4).

On November 27, 2006, the trial court denied the pro se motion to revise and revoke.  (Docket Entry # 31, p. 15).  On December 12, 2006, petitioner filed a pro se motion to stay the "appeal pending CPCS review."  (Docket Entry # 15, Ex. 1). Petitioner additionally filed another pro se motion for the

_____

[3]  The motion alternatively sought relief under Rule 30, Mass. R. Crim. P. ("Rule 30").

8

appointment of appellate counsel with supporting affidavits. (Docket Entry # 31, p. 16). On December 28, 2006, the trial court endorsed the pro se motion to stay the appeal and the pro se motion for reconsideration as, "No action taken . . . because counsel was appointed on Nov. 27, 2006." (Docket Entry # 15, Ex. 5).

On May 21, 2007, the Appellate Division of the Superior Court Department for the Review of Sentences to MCI Cedar Junction dismissed the appeal of the judgment imposing the sentence to MCI Cedar Junction.[4] The order, which references counts one and four under which the trial court imposed the sentence to MCI Cedar Junction, dismissed the October 11, 2006 notice of appeal.

On June 30, 2008, petitioner filed a motion to withdraw the guilty plea and for a new trial under Rule 30. (Docket Entry # 31, pp. 17 & 147-149). In the motion and supporting memorandum, petitioner raises an ineffective assistance of counsel claim similar to ground one; a claim that he was forced to enter a plea of guilty by trial counsel similar to ground two; a claim that the prosecution misled the grand jury with false and deceptive evidence similar to the prosecutorial misconduct claim in ground

---

[4] Massachusetts law provides, "there shall be an appellate division of the superior court for the review of sentences to the state prison imposed by final judgment in criminal cases." Mass. Gen. L. ch. 278, § 28A.

three; and a claim that the Commonwealth intentionally withheld favorable evidence similar to ground four. (Docket Entry # 31, pp. 147-149 & 225-241). Petitioner also maintained that trial counsel was ineffective by not investigating the charges, including that the collapsed lung of Haddon, resulted from overexertion as opposed to stab wounds inflicted by petitioner. (Docket Entry # 15, Ex. 7). On July 9, 2008, the trial court denied the motion after reviewing the colloquy. On July 18, 2008, petitioner filed a pro se notice of appeal of the denial of the motion to withdraw the guilty plea and for a new trial under Rule 30. He also filed a pro se motion for the appointment of counsel for appeal. (Docket Entry # 31, p. 17).

On July 24, 2008, the trial court referred the motion for appointment of counsel for appeal to CPCS for review. On August 15, 2008, CPCS declined to assign petitioner counsel. (Docket Entry # 31, p. 17). On December 18, 2008, petitioner filed a motion for the reconsideration of appointment of counsel to the appeals court. (Docket Entry # 31, p. 94). Petitioner requested that the appeals court "appoint the [CPCS] to investigate my arguments against [trial counsel] and appoint an appeals court attorney to represent the defendant to withdraw his guilty plea and new trial." (Docket Entry # 31, p. 244). On December 18, 2008, the appeals court denied the motion as "CPCS has already screened and declined to appoint counsel for the appeal."

(Docket Entry # 31, p. 94).

On appeal of the motion to withdraw the guilty plea and the new trial motion, petitioner argues the ineffective assistance of counsel claim presently raised in ground one (Docket Entry # 31, pp. 96-97 & 111-123), a forced entry of a guilty plea claim similar to ground two (Docket Entry # 31, pp. 96-97 & 111-123), a claim that the prosecution misled the grand jury similar to ground three (Docket Entry # 31, pp. 96, 112 & 117-119) and a claim that the Commonwealth withheld exculpatory evidence similar to ground four (Docket Entry # 31, pp. 96-97 & 112-116). On appeal, respondent addressed and opposed each claim on the merits in pages seven to 15 of the appellate brief. (Docket Entry # 31, pp. 302-312). Respondent argued that the claim that trial counsel was ineffective is baseless, petitioner's guilty plea is valid as he was adequately informed of all the elements of the charges and the record refutes the claims in grounds three and four. (Docket Entry # 31, pp. 302-312).

On June 5, 2009, the appeals court affirmed the denial of the motion to withdraw the guilty plea and for a new trial. Commonwealth v. Mack, 907 N.E.2d at 265. The court also described the plea colloquy as "careful and thorough" and that "nothing in the record" suggested substandard representation on the part of petitioner's trial counsel. (Docket Entry # 15, Ex. 9). As noted earlier, the appeals court affirmed the denial for

reasons set out in the Commonwealth's brief.  <u>Commonwealth v.</u>
<u>Mack</u>, 907 N.E.2d at 265.

On June 22, 2009, petitioner filed an application for leave
to obtain further appellate review ("ALOFAR").  On September 10,
2009, the Massachusetts Supreme Judicial Court ("SJC") denied the
ALOFAR.  <u>Commonwealth v. Mack</u>, 913 N.E.2d 867, 867 (Mass. 2009).

On May 20, 2010, petitioner filed this petition.  (Docket
Entry # 1).  On September 3, 2010, petitioner filed a motion for
an evidentiary hearing and a motion for discovery.  (Docket Entry
## 19 & 20).  This court denied the motion for an evidentiary
hearing (Docket Entry # 19) and the motion for discovery (Docket
Entry # 20) and ordered respondent to file an answer within 20
days.  (Docket Entry # 25).  Petitioner filed the second motion
for an evidentiary hearing on April 25, 2011.  (Docket Entry #
33).  On May 24, 2011, respondent filed a memorandum in
opposition to the petition.  (Docket Entry # 37).  On June 27,
2011, petitioner filed an opposition to respondent's opposition
to the petition.  (Docket Entry # 39).


<u>FACTUAL BACKGROUND</u>

In early 2003, petitioner began a dating relationship with
Haddon and they began living together at Haddon's house in
Worcester.  (Docket Entry # 15, Ex. 3; Docket Entry # 31, p.
471).  On June 25, 2003, petitioner and Haddon traveled to the

12

Roxbury section of Boston for an event regarding the death of Haddon's friend. <u>Commonwealth v. Mack</u>, 907 N.E.2d at 265.

During the change of plea and sentencing on September 20, 2006, the prosecutor stated the alleged course of events:

> As a result of some discussion and disputes while that event was going on . . . Ms. Haddon while driving Mr. Mack away from that location in Roxbury had an argument with him in her car.
>
> Mr. Mack reacted to things that she said by striking her with his hands and by stabbing her with a knife, both inside and then outside the car. He stabbed her, and this was a kitchen knife that she recognized as having come from one of her kitchen sets, he stabbed her once in the back of the neck, once in the back, twice in the chest.
>
> He then left the scene. Ms. Haddon was taken by ambulance to the hospital, she was there for somewhere between one and two days. The most serious of the wounds caused her to have . . . a partial lung collapse . . ..
>
> During the two and a half weeks or so that passed before Mr. Mack was arrested they had telephone contact and also some face-to-face contact. During telephone messages Mr. Mack initially said that he wasn't going to turn himself in.
>
> He eventually was arrested in Roxbury on 13 July, 2003. After he was arrested he made many telephone calls that were recorded from the jail. During one of those phone calls [to Haddon] . . . what the Commonwealth would present as admissions specifically that he didn't want the incident between them on Washington Street to affect the relationship they had, that he knew he did wrong but she survived so she shouldn't go to the police, that if the roles were reversed and she had stabbed him and he lived, he wouldn't go to the police.
>
> He then went on to make statements that form the basis for the intimidation of a witness indictment in that case, which the Commonwealth would present essentially as veiled threats referring to people close to [Haddon].
>
> He names several people who were close to [Haddon] including the father of her child and said, so-and-so or so-and-so, naming the different people, might end up back in here, might end up back inside in prison, I'm not saying anything's going to happen to this particular person, but God don't like ugly and this is the kind of thing that happens when people get in other situations, what goes

around comes around, it might not come back today or tomorrow or next week, but it always comes back around.

(Docket Entry # 31, pp. 471-74).

Petitioner admitted to stabbing Haddon. <u>Commonwealth v. Mack</u>, 907 N.E.2d at 265. He also admitted to the telephone conversations as described by the prosecutor. (Docket Entry # 31, p. 476).[5] Petitioner contested two of the facts alleged by the prosecutor as incorrect:

> First of all, you know, I agreed to turn myself in, that was the first thing, right. Second of all . . . the conversation that me and Athena [Haddon] had at Nashua Street jail, right, was not a threat; it was just a general conversation that he took as to be a threat . . . it was just regular casual conversation . . . everyone that, you know, was in my business . . . is back in prison one way or another . . . and that's all I meant by that, it wasn't a threat.

(Docket Entry # 31, pp. 474-75).

The trial court asked petitioner "other than the fact that you recited about your state of mind when you were having the conversation with Ms. Haddon, are all the other facts that have been recited . . . true," to which petitioner responded affirmatively. (Docket Entry # 15, Ex. 3). The trial court conducted the requisite colloquy regarding petitioner's guilty pleas to the counts in the Indictment. (Docket Entry # 15, Ex.

---

[5] Petitioner admitted that approximately two and one half weeks before he was arrested, he made a telephone call to Haddon. After his arrest, petitioner made several telephone calls to Haddon from jail. These recorded telephone calls contained the statements that formed the basis for the intimidation of a witness charge in the Indictment. (Docket Entry # 31, pp. 472-74).

14

3).  Petitioner stated that he pled guilty "willingly, freely and voluntarily," he was not forced to plead guilty, he was fairly represented by his attorney, he "had enough time with [his] attorney to discuss [his] case, [his] rights, [his] defenses and the consequences of a change of plea to guilty," his "attorney has acted in [his] best interest and he pled guilty because he was guilty and for no other reason."  (Docket Entry # 15, Ex. 3). The trial court accepted the plea of guilty.  (Docket Entry # 15, Ex. 3).


## DISCUSSION

I.  Standard of Review

Respondent moves to dismiss grounds one through four of the petition.  Respondent argues that the appeals court's affirmation of the trial court's denial of petitioner's motion to withdraw his plea was a reasonable application of the law under Strickland v. Washington, 466 U.S. 668 (1984) ("Strickland").

Under section 2254(d)(1) there are "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. at 404.  Under the first category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"); Williams v. Taylor, 529 U.S. at 405-406 (same).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if the state court:

> correctly identifies the governing legal principles, but (I) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply. Gomes v. Brady, 564 F.3d at 537 (internal quotation marks omitted); see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

"'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'"

Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009). The
inquiry is an objective one, see McCambridge v. Hall, 303 F.3d
24, 36 (1st Cir. 2002), insofar as the decision "must have been
'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520
(2003).

An objectively unreasonable application of the relevant
jurisprudence differs from an incorrect or erroneous application
of such jurisprudence. Williams v. Taylor, 529 U.S. at 365;
accord Wiggins v. Smith, 539 U.S. at 520-521 ("state court's
decision must have been more than incorrect or erroneous").
Under the unreasonable application prong, the "habeas court may
not issue the writ simply because that court concludes in its
independent judgment that the relevant state-court decision
applied clearly established federal law erroneously or
incorrectly. Rather, that application must also be
unreasonable." Williams v. Taylor, 529 U.S. at 365; accord
Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under
AEDPA is not whether a federal court believes the state court's
determination was incorrect but whether that determination was
unreasonable--a substantially higher threshold"). When "it is
the state court's application of governing federal law that is
challenged, the decision 'must be shown to be not only erroneous,
but objectively unreasonable.'" Waddington v. Sarausad, 129
S.Ct. 823, 831 (2009); accord Foxworth v. St. Amand, 570 F.3d at

17

425 ("state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").

Section 2254(d) also "applies even where there has been a summary denial" such as where the state court denies a motion based on a "substantive ground that it is without merit." Cullen, 131 S.Ct. at 1402 (state court denied each state petition "'on the substantive ground that it is without merit'"). With these principles in mind, this court turns to the grounds for habeas relief.

II. Ground One

In ground one, petitioner claims that trial counsel was ineffective. (Docket Entry # 1). Petitioner maintains that trial counsel failed to use court appointed funds for experts, neglected to obtain any evidence favorable to petitioner and failed to file a motion to dismiss. (Docket Entry # 1).

Respondent seeks dismissal of ground one as not exhausted thereby resulting in a mixed petition and a dismissal of the entire petition. Under section 2254(b), this court may address and deny the merits notwithstanding a lack of exhaustion. The appeals court provides the last reasoned decision addressing the claim. Commonwealth v. Mack, 907 N.E.2d at 265. Respondent submits that the decision was not an unreasonable application of Strickland.

An ineffective assistance of counsel claim is "a mixed

question of law and fact and should therefore be reviewed under the 'unreasonable application' clause of section 2254(d)." Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011). Strickland provides the relevant clearly established law within the meaning of section 2254(d). See Cullen, 131 S.Ct. at 1403.

The Supreme Court also "recently reinforced the 'doubly' deferential standard that applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the Strickland principles." Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)). Under Strickland, the petitioner has the burden to show by a preponderance of the evidence that: "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996); accord Gonzales-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001). The Massachusetts state standard generally equates with the federal standard. See Scarpa v. DuBois, 38 F.3d 1, 7-8 (1st Cir. 1994) (noting that state and federal ineffective assistance of counsel standards "strike us as equivalent"); Commonwealth v. Licata, 591 N.E.2d 672, 676 n.10 (Mass. 1992); Commonwealth v. Cardenuto, 548 N.E.2d 864, 867 n.8 (Mass. 1990).

Under the first prong, the petitioner must show that "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Smullen v. United States, 84 F.3d at 23 (quoting Strickland, 466 U.S. at 687). There is also "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland at 689. Consequently, the ineffective assistance prong is satisfied "only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006). Strickland also establishes that, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland, 466 U.S. at 690; see also Harrington v. Richter, 131 S.Ct. at 779 ("rare are the situations in which the latitude counsel enjoys will be limited to any one technique or approach").

The second prong of Strickland requires proof that "counsel's errors prejudiced the defense" focusing on "the 'fundamental fairness of the proceeding.'" Gonzales-Soberal v. United States, 244 F.3d at 277-78; accord Lockhart v. Fretwell,

506 U.S. 364, 372 (1993) (prejudice prong focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").  Petitioner must demonstrate "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687; see also Lockhart v. Fretwell, 506 U.S. at 372 ("unreliability of fairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him").

As previously noted, petitioner asserts that his counsel was ineffective because he failed to use court approved funds for an investigator, transcriber and handwriting expert, failed to contact witnesses and obtain favorable evidence and failed to file a motion to dismiss the armed assault with intent to murder count.  (Docket Entry # 1).  Respondent maintains that "none of these alleged shortcomings rendered petitioner's counsel constitutionally ineffective" and there was no error on trial counsel's part that adversely affected the outcome of the case. (Docket Entry # 37).

Respondent contends that trial counsel's decision not to conduct a further investigation into the case was reasonable given the circumstances of petitioner's case.  Clearly established federal law as determined by the Supreme Court

dictates that counsel "'has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" <u>Janosky v. St. Amand</u>, 594 F.3d 39, 49 (1st Cir. 2010). When assessing counsel's decision not to investigate, the standard is "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Id.</u> Beyond reasonableness, "'specific guidelines are not appropriate'" and "<u>Strickland</u> itself rejected the notion that the same investigation will be required in every case." <u>Cullen</u>, 131 S.Ct. at 1406-1407. The Sixth Amendment "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).

Specifically, petitioner contends that trial counsel never spoke to the handwriting expert regarding a letter written by petitioner. As stated in open court wherein the trial court inquired about the handwriting expert, trial counsel contacted the expert during the pretrial proceeding and stated that, based on his conversation, determined that the expert's findings were "not germane to this particular matter." (Docket Entry # 31, p. 423).[6] During the same proceeding, trial counsel also stated he would not call this witness based on a "tactical[,] strategic

_____

[6] Trial counsel asserted that the handwriting expert "analyzed several different writings, none of which are in question" in the instant matter. (Docket Entry # 31, p. 410).

consideration." (Docket Entry # 31, pp. 423-24). Trial counsel's determination was confirmed by the trial court, which advised petitioner:

> Mr. Mack, you are going to have to make some determinations if she [Haddon] says that [this] letter came from you, we still have the situation of, as [trial counsel] has set forth, that if Ms. Haddon is going to take the stand and say that this is your handwriting based upon her knowledge and you want to challenge her statement you may open up evidence about the other case; one of the realities of life in this type of situation.

(Docket Entry # 31, p. 420).

Petitioner did not raise this aspect of the ineffective assistance of trial counsel claim to the trial court in the motion to withdraw the guilty plea and for a new trial, to the appeals court in the appellate brief or to the SJC in the ALOFAR. Section 2254(d)(1) review only applies it the state court "adjudicated the merits" of the federal claim. 28 U.S.C. § 2254(d). Although "[s]ection 2254(d) applies even where there has been a summary denial," Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011), the summary denial must be on the merits.

Where, as here, the state courts never addressed the federal claims, "federal review is de novo." Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007); accord Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006) (de novo review applies to federal claim that was "raised before the state court but was left unresolved") (internal quotation marks omitted); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); see also Teti v. Bender, 507 F.3d at 56

(adjudication on merits takes place "if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced'").

As previously noted, respondent raised the issue of exhaustion of state court remedies. Here, the issue is not exhausted and neither the cause and prejudice or miscarriage of justice standard resurrects the issue. In the alternative, because this court can deny a petition on the merits notwithstanding a failure to exhaust pursuant to section 2254(b), this court turns to that analysis applying the aforementioned de novo review. In light of the foregoing as well as the strategic and reasonable nature of trial counsel's decision, the appeals court's decision was reasonable in light of <u>Strickland</u> and its progeny.

Next, petitioner asserts that trial counsel was ineffective by failing to "contact **any** witnesses and obtain evidence favorable for the defendant." (Docket Entry # 1; emphasis in original). Respondent contends that given the strong evidence of guilt, including admissions by petitioner, trial counsel's representation was reasonable and/or not prejudicial. (Docket Entry # 37). On appeal, petitioner raised the allegation of ineffective assistance of trial counsel due to the failure to call witnesses including inter alia Linda Johnson-Cormier ("Cormier") and investigate information relative to Raymond

Gaines ("Gaines"). (Docket Entry # 31, pp. 103-123). Respondent addressed the claim on the merits under both the ineffective and prejudice prongs of <u>Strickland</u> in the Commonwealth's brief to the appeals court. (Docket Entry # 31, pp. 310-311). The appeals court rejected the ineffective assistance of counsel claim and affirmed the trial court's decision "essentially for the reasons set out in pages 7 to 17 of the Commonwealth's brief." <u>Commonwealth v. Mack</u>, 907 N.E.2d at 265. The deferential review applicable under section 2254(d) therefore applies.

Here, trial counsel's failure to investigate Cormier and Gaines as witness was reasonable and not prejudicial as there was no evidence that the witnesses actually had any information that would prove petitioner's innocence. (Docket Entry # 31, p. 308). Indeed, the evidence of petitioner's guilt was also overwhelming. According to the Commonwealth's evidence, the petitioner yelled, "'I'll [explicative] kill you'" at Haddon immediately before the stabbing. (Docket Entry # 31, p. 304). Petitioner also indicated his guilt in a pretrial telephone conversation with Haddon when he asked her not to cooperate with law enforcement. (Docket Entry # 31, p. 299). During the colloquy relative to the guilty plea proceeding, petitioner admitted under oath to stabbing Haddon "once in the back of the neck, once in the back, twice in the chest." (Docket Entry # 15, Ex. 3). Thus, trial counsel's options for crafting a defense, including investigating

Gaines and calling Cormier as a witness, were limited. Accordingly, with respect to the alleged ineffectiveness and the alleged prejudice, the appeals court's decision rejecting petitioner's claim and affirming the trial court was not an unreasonable application of <u>Strickland</u> and did not cause any prejudice.

Next, petitioner alleges that trial counsel was ineffective for not filing a motion to dismiss on the grounds that Haddon's stab wounds were superficial and did not cause the collapsed lung. (Docket Entry ## 37 & 39). Respondent contends that petitioner's allegations concerning Haddon's injuries are false and unsupported by the record. (Docket Entry # 37). Under Massachusetts law, a victim's injuries do not have to be life threatening to sustain a conviction for assault with intent to murder. <u>See</u> <u>Commonwealth v. Sylvester</u>, 617 N.E.2d 661, 662-663 (Mass.App.Ct. 1993). Moreover, although petitioner maintains that Haddon's collapsed lung was the result of overexertion, the record shows the opposite. (Docket Entry # 31, pp. 166, 169 & 302-03). Additionally, during the change of plea hearing, petitioner admitted that when stabbing Haddon "the most serious of the wounds caused her to have a [partially collapsed lung] which would have been life threatening if not treated immediately." (Docket Entry # 31, p. 472).

Petitioner raised this aspect of the ineffective assistance

of trial counsel claim to the appeals court. (Docket Entry # 31, pp. 108-123). On appeal, respondent addressed the claim on the merits at pages 15 to 17 of the Commonwealth's brief arguing both prongs of Strickland. (Docket Entry # 31, pp. 310-311). The appeals court rejected the ineffective assistance of counsel claim and affirmed the trial court's decision "essentially for the reasons set out in pages 7 to 17 of the Commonwealth's brief." Commonwealth v. Mack, 907 N.E.2d at 265. Section 2254()d) review therefore applies.

Given the inclusion of the damaging documents in the record, trial counsel's decision not to file a motion to dismiss was reasonable. Such documents also belie the existence of any prejudice. Hence, the decision by the appeals court relative to the failure to file a motion to dismiss based on the medical records was not an unreasonable application of clearly established law as determined by Strickland and its progeny relative to both the ineffectiveness and the prejudice prongs.

III. Ground Two

In ground two, petitioner contends that he was forced to enter a plea of guilty that the trial court never should have accepted. (Docket Entry # 1). In particular, he asserts that the plea is invalid due to the fact that he had an argument with trial counsel because counsel "was not doing [anything] to assist" in petitioner's case. (Docket Entry # 1). Petitioner

further contends that the trial court should not have accepted the change of plea until it conducted a hearing "on the cause of a change of plea and during the commencement of another trial." (Docket Entry # 1).

In presenting this argument to the appeals court, petitioner cited Brady, 397 U.S. at 748, and Boykin v. Alabama, 395 U.S. 238 (1969). (Docket Entry # 31, pp. 120-122). Respondent addressed the claim on the merits. (Docket Entry # 31, pp. 305-307). Although the appeals court failed to cite federal case law, the court's analysis was an adjudication on the merits as it was consistent with the federal constitutional requirements for a valid guilty plea. See Brady, 397 U.S. at 748 (to be valid, plea must be knowing, intelligent and voluntary); see also Early v. Packer, 537 U.S. 3, 8 (2002) (state court is not required to cite federal case law or Supreme Court precedent so long as the state court's reasoning and ruling does not contradict them). Section 2254(d) review therefore applies. Respondent submits that the decision by the appeals court was not contrary to or an unreasonable application of clearly established law under section 2254(d)(1).

It is well established "that a guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady, 397 U.S. at 748. For a plea to be valid, the defendant must understand that by pleading guilty, he gives up his

constitutional right to trial, to confront his accusers and his right against self-incrimination. Boyken v. Alabama, 395 U.S. at 242 ("a plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment"). The "minimum requirement" is that the defendant's plea be "the voluntary expression of his own choice." Brady, 397 U.S. at 748. The voluntariness of a defendant's guilty plea "can be determined only by considering all of the relevant circumstances surrounding it." Id. at 749; cf. Haynes v. Washington, 373 U.S. 503, 513 (1963).

Where, as here, a criminal defendant pleads guilty on the advice of counsel, "the focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea." Tollett v. Henderson, 411 U.S. at 266; accord Brady, 397 U.S. at 750; McMann v. Richardson, 397 U.S. 759, 767 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970). The "constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own competent counsel" or the trial judge. Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005).

Here, the trial judge conducted a plea colloquy before accepting petitioner's plea of guilty. (Docket Entry # 31, pp.

461-482). The appeals court further noted that the trial judge conducted a "careful and through plea colloquy" during which petitioner "agreed, under oath, that he committed the crimes and was pleading guilty, knowingly, freely, and voluntarily." Commonwealth v. Mack, 907 N.E.2d at 265. During the colloquy, petitioner assured the trial court that the nature of the charges, the maximum punishment and the elements of the offenses were explained to him by trial counsel. (Docket Entry # 31, pp. 466-67). Petitioner thereafter affirmed that he pled guilty willingly, freely and voluntarily. (Docket Entry # 31, p. 479). Petitioner also admitted that he had plenty of time to consult with his attorney, he was fairly represented and that his attorney acted in his best interest. (Docket Entry # 31, pp. 479-480).

The appeals court's decision affirming the validity of the plea on the merits was therefore not an unreasonable application of the above noted clearly established Supreme Court law under Brady, Boyken and their progeny. Ground two of petitioner's claim therefore fails to warrant habeas relief.

IV. Ground Three

In ground three, petitioner contends that the prosecution misled the grand jury "to get an indictment for armed assault with intent to murder that never happened." (Docket Entry # 1). Petitioner summarizes the prosecutorial misconduct as follows:

30

> Prosecution misconduct who presented false and misleadind
> [sic] facts to the Grand Jury that the victim lung collapes
> [sic] as the result of a stab wound when the medical records
> clearly stated the collapes [sic] lung was the result of
> over-exertion for the purpose of over charging the defendant
> with more charges.

(Docket Entry # 1). Respondent contends that the grand jury

claim lacks merit and is a question of state law and therefore

not cognizable on habeas review. (Docket Entry # 37).

It is well settled that "'"federal habeas corpus relief does

not lie for errors of state law."'" Swarthout v. Cooke, 131

S.Ct. 859, 861 (2011); accord Sawyer v. Smith, 497 U.S. 227, 239

(1990) (state law errors that are not constitutional errors "may

not be corrected under federal habeas); Kater v. Maloney, 459

F.3d 56, 61 (1st Cir. 2006); Sanna v. DiPaolo, 265 F.3d 1, 12-13

(1st Cir. 2001) (habeas review unavailable for state law error

except in "extreme cases" where state law or practice betrays

"fundamental principle of justice" under the Due Process Clause).

Because the "Fifth Amendment right to a grand jury presentation"

does not apply "to the states . . . . any claim of defect in a

state grand jury proceeding is a claim of a state-law error that

does not raise federal constitutional concerns unless it rises to

the level of a due process deprivation." McDaniel v. Brown, 2006

WL 2331105, *9 (D.N.J. Aug. 10, 2006) (citing Alexander v.

Louisiana, 405 U.S. 625, 633 (1972)); accord Peters v. Kiff, 407

U.S. 493, 496 (1972) ("Fifth Amendment right to a grand jury does

not apply in a state prosecution").

The Supreme Court in <u>United States v. Williams</u> also held that the supervisory power of the federal courts does not extend to determining standards of prosecutorial conduct before the grand jury. <u>United States v. Williams</u>, 504 U.S. 36, 46-47 (1992); <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982) ("federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension"). Moreover, a petitioner cannot challenge a grand jury indictment on the basis of insufficient evidence. <u>See</u> <u>Costello v. United States</u>, 350 U.S. 359, 361-362 (1956) (no "constitutional provision prescribes the kind of evidence upon which grand juries must act"). The claim therefore arises under state law which is not cognizable on habeas review.

In the alternative and as argued by respondent, "It is well-settled that a defendant's properly counseled plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights." <u>Rivers v. Costello</u>, 2011 WL 4592041, *7 (N.D.N.Y. Sept. 9, 2011) (citing <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)). Indeed, the First Circuit "assiduously follow[s] the letter and spirit of <u>Tollett</u>, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up

to that point, thereby absolving any errors in the trial court's antecedent rulings (other than errors that implicate the court's jurisdiction)." United States v. Cordero, 42 F.3d 697, 699 (1st Cir. 1994); see Gilday v. Garvey, 919 F.Supp. 506, 515 (D.Mass. 1996) (habeas petitioner's challenge to lawfulness of his conviction obtained by his guilty plea "is confined to whether the underlying plea was both counseled and voluntary") (citing United States v. Broce, 488 U.S. 563, 569 (1989), and Tollett, 411 U.S. at 266-67).

For example, the court in Whitehurst rejected a habeas petitioner's claim that the Indictment was tainted by "'illegally obtained evidence'" because the court's finding that the guilty plea was valid "precludes petitioner from now challenging the legality of events that occurred prior to the entry of that plea, see Tollett, 411 U.S. at 266-67, including his habeas claims that the prosecution improperly used statements he made to law enforcement agents to secure the Indictment." Whitehurst v. Senkowski, 485 F.Supp.2d 105, 117-118 (N.D.N.Y. 2007). Here too, petitioner attempts to use alleged misconduct by the prosecutor in presenting false and misleading evidence to the grand jury as a basis for habeas relief. As established under Tollett, petitioner's subsequent guilty plea precludes such an attack. In sum, ground three does not entitle petitioner to habeas relief.

V. Ground Four

In ground four, petitioner submits that the prosecution failed to disclose material exculpatory evidence. Petitioner contends that the Boston Police and the Commonwealth:

> . . . withheld phone records between [L]ee and the victim and [their] conversations, interviews and statements, failed to produce the interview between the Commonwealth and an alleged victim Linda Johnson-Cormier at M.C.I. Framingham regarding the case, and refused to get the phone records of another inmate at M.C.I. Concord between the defendent [sic] and the victim [that] would reflect that the victim and Detective Lee were friends and lovers, and the suggested plea deal that the Commonwealth had suggested they would officer the defendent [sic] was outside the committed plea offereed [sic].

(Docket Entry # 1).

As previously explained, under <u>Tollett</u> a claim for an alleged <u>Brady</u> violation cannot be brought as an independent claim. <u>Tollett v. Henderson</u>, 411 U.S. at 267. After a defendant pleads guilty he cannot "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S. at 267. Respondent's argument that <u>Tollett</u> bars ground four (Docket Entry # 37) is therefore correct.

In the alternative, the appeals court's rejection of the claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. Citing <u>Brady</u> and <u>United States v. Agurs</u>, 427 U.S. 97, 111 (1976),

34

petitioner presented the claim to the appeals court. (Docket Entry # 31, pp. 112-116). Respondent addressed the claim on the merits on pages 12 through 14 of the Commonwealth's brief. (Docket Entry # 31, pp. 307-309). Respondent argued inter alia that "the defendant's unsubstantiated claims that the prosecution ignored or concealed evidence that he is innocent are belied by the record, most notably the defendant's own admissions." (Docket Entry # 31, p. 307).

The appeals court affirmed the trial court's denial of the motion to withdraw the guilty plea and for a new trial. In particular, the court rejected the claim, as well as a number of other claims, for reasons set out in the Commonwealth's brief, including pages 12 through 14. The appeals court's decision was therefore on the merits and, as such, was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Ground four fails to provide a basis for habeas relief.


CONCLUSION

In accordance with the foregoing discussion, the motion for an evidentiary hearing (Docket Entry # 33) is **DENIED**. This court **RECOMMENDS**[7] that the respondent's request to deny the petition in

---

[7] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any

the memorandum in opposition to the petition (Docket Entry # 37)

be **ALLOWED** and that the petition (Docket Entry # 1) be **DISMISSED.**


   /s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

party may respond to another party's objections within 14 days
after service of the objections.  Failure to file objections
within the specified time waives the right to appeal the order.